UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SASHA BOWERS, <br> *On behalf of D.A.N.* <br>   Plaintiff <br> <br> v. <br> <br> KILOLO KIJAKAZI,[1] <br>   Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION NO. 4:21-CV-0062 <br> <br> <br> <br> (ARBUCKLE, M.J.) |

MEMORANDUM OPINION

I. INTRODUCTION

Plaintiff Sasha Bowers, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her minor son's application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

II.   BACKGROUND & PROCEDURAL HISTORY

On December 25, 2017, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act on behalf of her minor child, D.A.N. (Admin. Tr. 12; Doc. 17-2, p. 13). In this application, Plaintiff alleged D.A.N. became disabled on March 24, 2017, when he was seven years old, due to the following conditions: Asperger's, ADD, ADHD, and severe anxiety. (Admin. Tr. 154; Doc. 17-6, p. 5).

On March 27, 2018, the application was denied at the initial level of administrative review. (Admin. Tr. 12; Doc. 17-2, p. 13). On May 31, 2018, Plaintiff requested an administrative hearing. *Id*.

On September 10, 2019, Plaintiff and D.A.N. appeared with counsel and testified during a hearing before Administrative Law Judge Susan L. Torres (the "ALJ"). *Id*. On September 30, 2019, the ALJ issued a decision denying the

application for benefits. (Admin. Tr. 25; Doc. 17-2, p. 26). On November 22, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 131; Doc. 17-2, p. 57).

On November 16, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 17-2, p. 2).

On January 11, 2021, Plaintiff initiated this action on D.A.N.'s behalf by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court award benefits to D.A.N. *Id*.

On August 2, 2021, the Commissioner filed an Answer. (Doc. 16). In the Answer, the Commissioner maintains that the decision holding that D.A.N. is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 17).

Plaintiff's Brief (Doc. 18), the Commissioner's Brief (Doc. 21), and Plaintiff's Reply (Doc. 22) have been filed. This matter is now ripe for decision.

III.  STANDARDS OF REVIEW

    A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.  STANDARDS GOVERNING THE ALJ'S EVALUATION OF CHILDHOOD DISABILITY APPLICATIONS

A claimant younger than the age of 18 ("child") shall be considered disabled under Title XVI of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than twelve months." 42 U.S.C.

§ 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. Notwithstanding the foregoing, no child who engages in substantial gainful activity, as defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.906.[2]

In determining whether a child is eligible for SSI payments due to disability, The ALJ utilizes a three-step evaluation process. During this process, the ALJ must determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a medically determinable, severe impairment; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. If the ALJ concludes that the child is not disabled at any step of this this process, the analysis will end at that point. *See* 20 C.F.R. § 416.924.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard,

---

[2] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on September 30, 2019.

the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV. DISCUSSION

Plaintiff raised the following issues in her statement of errors:

(1) Whether the ALJ erred in failing to conclude that Plaintiff met one or more childhood listing level mental impairments.

(2) Whether the ALJ had substantial medical evidence to support a listing level impairment and erred in failing to the develop the medical (psychological) record in that regard.

(Doc. 18, p. 3).

The first issue raised, however, does not appear to match the argument raised in the brief. Although Plaintiff argues that D.A.N. meets a listing, she does not specify which one. Instead, she argues that the ALJ improperly discounted Plaintiff's testimony about D.A.N.'s impairments.

A. THE ALJ'S DECISION DENYING D.A.N.'S APPLICATION

In her September 2019 decision, the ALJ found that D.A.N. was a school-age child during the relevant period. *See* 20 C.F.R. § 416.926a(g)(2) (defining school age child as age six to twelve). Then, the ALJ evaluated D.A.N.'s application at steps one through three of the sequential evaluation process.

At step one, the ALJ found that D.A.N. did not engage in substantial gainful activity at any point between December 25, 2017 (the alleged onset date) and September 30, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 15; Doc. 17-2, p. 16). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), and anxiety disorder. (Admin. Tr. 15; Doc. 17-2, p. 16). The ALJ noted that, D.A.N.'s alleged impairment of Asperger's disorder/autism was not medically determinable. In doing so, she explained:

> On the claimant's behalf, disability is also alleged due to Asperger's disorder/autism (Ex. 2E; Testimony). While features of autism spectrum disorder or provisional diagnosis of the same are noted in the record (*see* E.x. 1F, 2F, 3F, 8F) and subjective reports of the diagnosis per the claimant's mother are documented (*see* Ex. 8F), no acceptable medical source has diagnosed this disorder sufficient to establish an independent medically determinable impairment.

(Admin. Tr. 15; Doc. 17-2, p. 16). At step three, the ALJ found that, D.A.N. did not have an impairment or combination of impairments that medically or functionally equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 15-25; Doc. 17-2, pp. 16-26).

When evaluating whether D.A.N.'s impairments were functionally equivalent to a listing, she found that D.A.N. had less than marked limitations in the domains of: acquiring and using information; attending and completing tasks; interacting and relating with others; moving and manipulating objects; and caring for himself. (*Id.*). The ALJ found D.A.N. had no limitation in health and physical well-being. (*Id.*). Thus, the ALJ found D.A.N. was not disabled under the Social Security Act. (Admin. Tr. 25; Doc. 17-2, p. 26).

    B.    WHETHER THE ALJ ERRED IN FINDING D.A.N.'S MOTHER'S TESTIMONY AS UNPERSUASIVE

Plaintiff argues that the ALJ erred in finding that her testimony was not credible.[3] (Doc. 18, pp. 3-4). Plaintiff contends that the ALJ based her credibility decision entirely on D.A.N.'s academic improvement in cyber school, without critically analyzing his mental impairments. (*Id.*). Plaintiff also contends that the

---

[3] As noted earlier, in Plaintiff's statement of errors, Plaintiff contends that the ALJ erred when she found that D.A.N. did not have any limitations in any of the domains. However, the body of Plaintiff's argument on this point consists entirely of a credibility argument.

ALJ injected her own lay opinion into the analysis when she relied on adequate academic performance as a sign that D.A.N.'s mental impairments improved. (*Id.*).

The Commissioner counters that the ALJ correctly found that Ms. Bowers' testimony was unpersuasive. (Doc. 21, p. 16). The Commissioner argues that the ALJ properly decided that Ms. Bowers not entirely credible because her testimony conflicted with medical and academic evidence in the record. (*Id.* at pp. 17-19). Finally, the Commissioner asserts that the ALJ extensively evaluated the evidence, and that her decision is supported by substantial evidence. (*Id.*). On this point, I agree with the Commissioner; the ALJ's credibility decision is supported by substantial evidence.

In the administrative hearing, as summarized by the ALJ,[4] Ms. Bowers testified that:

> the claimant often refuses to use his school books and refuses to play team sports; has difficulty going out in public and has few friends as he does not get along well with others; requires frequent reminders to attend to his personal care tasks and still does them poorly; and continues to have serious and frequent tantrums during which he throws himself to the ground, screams, yells, hurts himself, and hurts others. She reported that these tantrums are the reason she placed him in cyberschool, as he was being repeatedly sent home from regular school but was refused a 504 plan or IEP; she similarly reported she tried medication and counseling for these symptoms, but did not like

---

[4] Neither party argues that the ALJ erred in summarizing Ms. Bower's testimony. Indeed, upon review, the Court believes that the ALJ accurately summarized Plaintiff's testimony regarding D.A.N.'s condition.

> them or see any results, such that, as of the hearing, the claimant was not taking medication for his mental health symptoms or receiving any therapy or other specialist care. She reported that the claimant also continues to fidget, jump around, bounce around, had difficulty sleep, lose concentration frequently, have panic attacks, get nervous in public, require extended times and many reminders to do things, and be irritable at times.

(Admin. Tr. 17; Doc. 17-2, p. 18) (internal citations omitted).

The ALJ rejected this testimony, as Ms. Bowers' statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*).

In arriving to this conclusion, the ALJ acknowledged that "the medical evidence for the period prior to the application filing date suggests very serious disorders." (*Id.*). The ALJ noted that D.A.N. was enrolled in a regular education setting, but had "multiple incidents of inappropriate, unsafe, and disrespectful behavior towards teachers and peers documented during the 2016-2017 school year." (*Id.*). Additionally, D.A.N. had ongoing evaluations and treatments with mental health providers for his ADHD, ODD, and anxiety disorder. (*Id.*). Despite this treatment, in May 2017, he underwent a crisis assessment, and withdrew from public school. (*Id.*). In September 2017, D.A.N. enrolled in a cyber school. (*Id.*). Further, in September 2017, both Ms. Bowers and D.A.N. reported in therapy that D.A.N. is "doing well in his cyber school placement, had stopped hitting others,

and knew coping skills, although he continued to have temper tantrums."[5] (*Id.*). And indeed, in cyber school, D.A.N.'s teachers noted that he had a positive attitude, good attendance, and no major disciplinary incidents. (Admin. Tr. 17-18; Doc. 17-2, pp. 18-19).

Additionally, since the application date, December 25, 2017, the ALJ noted that D.A.N. has not had any treatment for his mental health impairments, besides routine primary care follow ups and cyber school services, signaling that D.A.N.'s condition has improved. (*Id.*). In a September 2018 visit, D.A.N.'s primary care provider noted that he did not need any mental health medications or other forms of treatment. (*Id.* (citing Admin. Tr. 425-26; Doc. 17-7, pp. 187-88)). Further, in an April 2019 individualized education program ("IEP") assessment, D.A.N. was noted to have average academic performance, and "ADHD and executive functioning issues." (*Id.* (citing Admin. Tr. 388; Doc. 17-7, p. 150)). To accommodate this, D.A.N. was recommended to be given use of an organizer, prompts to remain on task, and monitoring of his response to prompts.[6] (*Id.* (citing

---

[5] In Kathleen Stone's progress notes, she notes that over the course of D.A.N.'s visits, D.A.N. manages his emotions better, (Admin. Tr. 287; Doc. 17-7, p. 49) and stopped hitting others. (Admin. Tr. 288; Doc. 17-7, p. 50). However, D.A.N., at discharge, still "struggles with relationships in schools with peers and teachers. (Admin. Tr. 289; Doc. 17-7, p. 51).
[6] The IEP concluded that D.A.N. is respectful, polite, friendly, and can carry a conversation, but requires frequent prompts, struggles at times with working

Admin. Tr. 414; Doc. 17-7, p. 176)). Thus, based on this evidence, the ALJ concluded that Ms. Bowers' testimony was not entirely credible.

Contrary to Plaintiff's contention, the ALJ did not exclusively rely on academic improvement to determine Plaintiff's testimony. Rather, the ALJ used academic evidence in conjunction with medical evidence to come to a decision about Plaintiff's credibility. And despite this perceived error, the ALJ's credibility determination is supported by substantial evidence. The ALJ supported her conclusion by noting D.A.N.'s success in the cyber school setting, less intensive medical treatment, and minimal need for educational accommodations. Thus, the ALJ has satisfied her duty in analyzing Ms. Bowers' testimony. *Nocks v. Astrue*, 626 F.Supp.2d 431, 446 (D. Del. 2009) ("The ALJ must compare the objective evidence and the subjective complaints and is permitted to reject's plaintiff's subjective testimony so long as [she] provides a sufficient explanation for doing so."). As such, there is no reversible issue on this point.

---

quickly to complete a task, and does not like group work. (Admin. Tr. 387; Doc. 17-7, p. 149). Additionally, D.A.N. had average scores on the Working Memory Index, which measured his attention, concentration, and mental control. (Admin. Tr. 378; Doc. 17-7, p. 140).

C.     WHETHER THE ALJ ERRED IN FAILING TO OBTAIN A CONSULTATIVE EVALUATION

Plaintiff argues that the ALJ erred by failing to obtain a consultative evaluation for D.A.N. (Doc. 18, pp. 7-8). Plaintiff asserts that the ALJ only discussed medical records from psychologist John Gavazzi, Psy.D., which the ALJ found non-persuasive. (*Id.*). Thus, Plaintiff contends that the ALJ had no medical evidence to support her conclusions, and that she should have further developed the record by ordering a consultative evaluation. (*Id.*).

The Commissioner refutes this, and argues that "the ALJ had no duty to obtain a consultative examination report where the record was sufficient to make a disability determination . . . ." (Doc. 21, pp. 21-22). The Commissioner also argues that the ALJ had plenty of medical evidence to support her conclusion, that the ALJ can reach a disability finding without medical expert review, and that Plaintiff's counsel failed to raise this argument with the ALJ during the administrative hearing. (*Id.* at pp. 22-25). On this point, I agree with the Commissioner; there is no error on this point.

Social Security hearings are non-adversarial and as such, the ALJ has a duty to investigate all matters at issue and seek all relevant facts. *Schmidt v. Colvin*, No. 13-539, 2013 U.S. Dist. LEXIS 183434, at *31-34 (W.D. Pa. Dec. 23, 2013). In keeping with the Commissioner's duty to develop the record, the Commissioner's

regulations explain that if the agency cannot get the information it needs from the claimant's medical sources, it may decide to purchase a consultative examination. Before purchasing a consultative examination, the agency "will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file." 20 C.F.R. § 404.1519(a)(a); 20 C.F.R. § 416.919a(a). With respect to what situations may require the agency to purchase a consultative examination, the Commissioner's regulations explain:

> We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
>
> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b); 20 C.F.R. § 416.919a(b).

"The decision to order a consultative examination is within the sound discretion of the ALJ unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Miller v. Berryhill*, No. 17-cv-1452, 2019 WL 3776662, at *18 (M.D. Pa. Aug. 12, 2019) (citing *Thompson v. Halter*, 45 F. App'x. 146, 149 (3d Cir. 2002)). "[W]here the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Brown v. Saul*, No. 18-cv-01619, 2020 WL 6731732, at *10 (M.D. Pa. Oct. 23, 2020) (report and recommendation adopted by 2020 WL 6729164 (M.D. Pa. Nov. 16, 2020)) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)).

However, in this case, Plaintiff has not shown that the ALJ had insufficient evidence to render a decision. Plaintiff claims that because the ALJ found Dr. Gavazzi's medical opinion non-persuasive, "the ALJ simply had no medical evidence (psychological) on which to conclude that [D.A.N.] did not have a childhood listing mental impairment." (Doc. 18, p. 7). That is not true. The ALJ had numerous medical records to pour through, including a March 2017 psychological evaluation, progress notes from D.A.N.'s mental health providers, and a March 2019 psychoeducational evaluation from Dr. JoAnn Coslett. And

while the ALJ found the only medical opinion non-persuasive,[7] an ALJ is still under no duty to order a consultative examination in this case because the ALJ had other evidence. An ALJ considers more than just medical opinions when evaluating a claimant's disability. 20 C.F.R. § 416.926a(b)(3).

Finally, Plaintiff's counsel did not complain about an undeveloped record during the administrative hearing. An ALJ can presume that Plaintiff put forth her best case because she was represented by counsel. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). And in this case, the ALJ likely presumed that the record was complete hearing no objection from counsel.

For these reasons I find that the ALJ properly developed the record in this case. There is no reversible error on this point.

[The next page contains the Conclusion]

---

[7] Dr. Gavazzi believed D.A.N. had a less than marked limitation in three domains and no limitation in the other three domains. (Admin. Tr. 70-71, Doc. 17-3, pp. 5-6). The ALJ found this opinion non-persuasive because Dr. Gavazzi completed his opinion before new evidence was entered into the record. (Admin. Tr. 18-19, Doc. 17-2, pp. 19-20). The ALJ concluded that this new evidence suggested "slightly greater limitations" in some of the domains. (*Id.*).

V.  CONCLUSION

Accordingly, Plaintiff's request for relief be denied as follows:

(1) The final decision of the Commissioner will be AFFIRMED.

(2) Final judgment will be issued in favor of Kilolo Kijakazi.

(3) An appropriate Order will issue.

Date: September 6, 2022                    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge